a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| HARMANJOT SINGH HONDAL, Petitioner | CIVIL DOCKET NO. 1:20-CV-628-P |
| VERSUS | JUDGE DRELL |
| DIANNE WITTE, *ET. AL.*, Respondents | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Motion for Temporary Restraining Order (ECF No. 8) ("TRO") filed by Petitioner Harmanjot Singh Hondal ("Hondal"). Hondal is a detainee in the custody of the Bureau of Immigration and Customs Enforcement ("ICE"), detained at the Winn Correctional Center ("WCC") in Winnfield, Louisiana.

Because Hondal cannot establish entitlement to emergency injunctive relief, his request for a TRO or preliminary injunction (ECF No. 8) should be DENIED.

I. Background

Hondal is a native and citizen of India. ECF. No. 8 at 6. Hondal entered the United States without inspection on May 13, 2019, and was found to be inadmissible. ECF No. 17-1 at 7. Hondal has been in ICE custody since May 14, 2019, and he has been at WCC since June 10, 2019. *See id.* An immigration judge denied Honbvdal's request for bond, and Hondal was ordered removed on May 27, 2020. *See id.* Hondal reserved his right to appeal and is within his appeal period. *See id.*

Hondal filed an "Emergency Petition for Writ of Habeas Corpus and Complaint for Injunction and Declaratory Relief" (ECF No. 1), alleging that his detention was

unconstitutional. Hondal also filed the Motion for TRO (ECF No. 8) due to the global coronavirus ("COVID-19") pandemic. The Motion is now before the Court for disposition.

Hondal alleges that he is 22 years old and suffers from "hypertension, scabies and malnutrition," which put him at a higher risk for "heart damage, as well as kidney infection, chronic pain, and vision loss." ECF No. 8 at 6. Thus, Hondal alleges he is at higher risk for contracting or suffering complications from COVID-19. He claims that WCC cannot adequately protect him from the illness. ECF Nos. 1, 8.

The undersigned set an expedited briefing schedule and an evidentiary hearing (hereinafter, the "Hearing"), which was conducted on June 18, 2020. ECF No. 15.

II. Law and Analysis

A. The Court has jurisdiction under § 2241 because Hondal challenges the "fact and duration" of his detention, not his "conditions of confinement."

Respondents argue that the Court lacks jurisdiction to consider Hondal's claims under § 2241. This argument is based upon the distinction between "conditions of confinement" claims ("conditions claims") and "fact or duration of confinement" claims ("fact claims"). The parties do not dispute that a petitioner may, and should, assert fact claims under § 2241. *See Poree v. Collins*, 866 F.3d 235, 243 (5th Cir. 2017). But the parties dispute which type of claim Hondal asserts, and which "procedural vehicle" is appropriate for conditions claims.

Because the Court finds that Hondal asserts fact claims, not conditions claims, the question regarding the correct procedural vehicle for conditions claims is not addressed. *See Dada v. Witte*, 1:20-CV-00458, 2020 WL 2614616, at *1 (W.D. La.

2

May 22, 2020) (citing *Vazquez Barrera v. Wolf*, 2020 WL 1904497, at *4 (S.D. Tex. Apr. 17, 2020); *Bent v. Barr*, 2020 WL 1812850 (N.D. Cal. Apr. 9, 2020); *Juan E.M. v. Decker*, 2020 WL 2214586 (D.N.J. May 7, 2020); *Malam v. Adducci*, 2020 WL 1672662 (E.D. Mich. Apr. 6, 2020); *Basank v. Decker*, 2020 WL 1481503 (S.D.N.Y Mar. 26, 2020); *Thakker v. Doll*, 2020 WL 2025384 (M.D. Penn. Apr. 27, 2020)). Since Hondal challenges the fact of his confinement, § 2241 applies.

### B.  TRO and Preliminary Injunction

Hondal seeks a TRO, preliminary injunction, and ultimately habeas relief ordering his release from custody. Rule 65 of the Federal Rules of Civil Procedure provides for a TRO, in pertinent part, as follows:

> (b)(1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition, and (B) the movant's attorney certifies in writing any efforts made to give the notice and the reasons why it should not be required.

F.R.C.P. 65.

For a preliminary injunction to be granted, a Petitioner must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest. *See Bhatia v. Warden*, 1:16-CV-1125, 2017 WL 1026054, at *1 (W.D. La. Jan. 24, 2017), *report and recommendation adopted*, 2017 WL 1017634 (W.D. La.

Mar. 15, 2017) (citing *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005)).

A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries a burden of persuasion." *Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir. 1990). "The denial of a preliminary injunction will be upheld where the movant has failed sufficiently to establish any one of the four criteria." *Black Fire Fighters Ass'n*, 905 F.2d at 65.

Respondents have received notice and an opportunity to be heard. Thus, to the extent relief is warranted, the appropriate remedy is a preliminary injunction rather than a TRO.

    1. <u>Hondal has not established entitlement to emergency injunctive relief.</u>

Hondal is a civil detainee. As a result, his detention must remain "nonpunitive in purpose and effect." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Civil immigration detainees are specifically entitled to the protections of the Fifth Amendment to the United States Constitution. Its Due Process Clause, in relevant part, forbids the government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." Civil detention thus implicates the Due Process Clause: "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[T]he Due Process Clause applies to all 'persons' within the United

4

States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See id.* at 693.

The Supreme Court has long held that civil detention must be justified: "[G]overnment detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and 'narrow' nonpunitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal citations and quotations omitted). Civil detention becomes unconstitutional when "punitive" in nature, meaning "not [or no longer] reasonably related to a legitimate, nonpunitive governmental objective." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

Hondal may succeed on his substantive due process claim by establishing that his detention does not reasonably relate to a legitimate governmental purpose. He may make this showing, for example, by proving that, due to his age, immune deficiencies, or other comorbidities, he faces an elevated risk of contracting COVID-19 or suffering serious illness from it; that his particular circumstances also heighten the risk; and that preventive measures are difficult or impossible, leaving them unduly exposed to contracting the virus. *See Vazquez Barrera*, 2020 WL 1904497, at *5 ("Here, the Court finds that detention of Plaintiffs, who are at high risk of serious illness or death if they contract COVID-19, in MPC, where social distancing and proper hygiene are impossible, does not reasonably relate to a legitimate governmental purpose.").

The Court recognizes the risk to all prisoners and detainees posed by COVID-19. But a petitioner's claims must be distinct in some respect. *See Martinez Franco v. Jennings*, No. 20-CV-02474-CRB, 2020 WL 1976423, at *3 (N.D. Cal. Apr. 24, 2020) ("Franco does not identify, and the Court has not seen, a case finding that increased likelihood of contracting the virus rendered unconstitutional the detention of a person without underlying medical conditions or some other vulnerability."). The Fifth Circuit has explained that "[t]he 'incidence of diseases or infections, standing alone,' do not 'imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks.'" *Valentine v. Collier*, No. 20-20207, 2020 WL 1934431, at *3 (5th Cir. Apr. 22, 2020) (quoting *Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009)). This Court has already concluded the same: "[P]risoners are not entitled to release or transfer based solely on generalized COVID-19 fears and speculation." *Riggs v. Louisiana*, No. CV 3:20- 0495, 2020 WL 1939168, at *2 (W.D. La. Apr. 22, 2020).[1] Otherwise, the claims of any prisoner or detainee would be equally meritorious–or equally meritless–notwithstanding their individual situations. That result would be untenable.

To separate meritorious claims from generalized risk, some courts have focused upon underlying detainees' medical conditions, detainees' criminal histories

---

[1] And so have many others. *See, e.g., United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification."); *Saillant v. Hoover, et al.*, No. 1:20-CV-00609, 2020 WL 1891854, at *5 (M.D. Pa. Apr. 16, 2020) (denying habeas relief in part because the petitioner sought habeas corpus relief merely because he was "detained and subjected to a generalized risk of contracting COVID-19").

or tendency toward violence, and the detention facility's response to the pandemic. *See Vazquez Barrera*, 2020 WL 1904497, at *6. Other courts have created non-exhaustive lists of factors that may be considered in determining whether to grant habeas relief based on COVID-19 concerns. *See Saillant*, 2020 WL 1891854, at *4; *Vazquez Barrera*, 2020 WL 1904497, at *6. This Court recently compiled a number of factors in determining whether to grant habeas release to ICE detainees. *See Dada, et al. v. Witte, et al.*, 1:20-CV-458, ECF No. 17 at 22-23. Specifically, the Court considered:

    (1)    whether the petitioner has been diagnosed with COVID-19 or is experiencing symptoms consistent with the disease;

    (2)    whether the petitioner is among the group of individuals that is at higher risk of contracting COVID-19 as identified by the CDC, due to the petitioner's age or an underlying health condition;

    (3)    whether the petitioner has been, or has likely been, directly exposed to COVID-19;

    (4)    the physical space in which the petitioner is detained, and how that physical space affects his risk of contracting COVID-19;

    (5)    the efforts that detention facility officials have made to prevent or mitigate the spread of, or harm caused by, COVID-19;

    (6)    any danger to the community, or to the petitioner's immigration proceedings, that may be posed by the petitioner's release; and

    (7)    any other relevant factors.

*See id.*

Hondal has not been diagnosed with COVID-19. However, according to the "Declaration" submitted by his attorney, Hondal has been "coughing and not been

7

treated for it." ECF No. 8-1 at 1. However, he received medical treatment in March for cold-like symptoms. ECF 17-1 at 7.

Hondal is not at an age that automatically puts him at higher risk for COVID-19 according to the Center for Disease Control ("CDC")[2]. ECF No. 8.

Hondal does not have any of the underlying medical conditions recognized by the CDC that place someone at higher risk for severe illness from COVID-19."[3] According to the CDC, those conditions include: (1) Chronic kidney disease; (2) COPD (chronic obstructive pulmonary disease); (3) Immunocompromised state (weakened immune system) from solid organ transplant (4) Obesity (body mass index [BMI] of 30 or higher); (5) Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; (6) Sickle cell disease; (7) Type 2 diabetes mellitus.[4]

Hondal reportedly suffers from "hypertension, scabies and malnutrition." ECF No. 8 at 6. The CDC recognizes that hypertension is one of the many conditions that "might" cause someone to be at an increased risk for severe illness.[5] However, the CDC also opines that:

---

[2] *Older Adults,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited July 13, 2020).

[3] *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 13, 2020).

[4] *See id.*

[5] "Based on what we know at this time, people with the following conditions **might be at an increased risk** for severe illness from COVID-19:
- Asthma (moderate-to-severe)
- Cerebrovascular disease (affects blood vessels and blood supply to the brain)
- Cystic fibrosis

8

> Although many patients with severe illness from COVID-19 have underlying hypertension, it is unclear at this time if hypertension is an independent risk factor for severe illness from COVID-19. Hypertension is common in the United States. Hypertension is more frequent with advancing age and among men, non-Hispanic blacks, and people with other underlying medical conditions such as obesity, diabetes, and serious heart disease. At this time, people whose only underlying medical condition is hypertension are not considered to be at higher risk for severe illness from COVID-19.[6]

In addition, courts have recognized that hypertension is not noted as a COVID-19 risk factor. *See, e.g.*, *Betancourt Barco v. Price*, 2020 WL 2099890, at *7 (D.N.M. May 1, 2020) ("The CDC does not list hypertension on the webpage they use to publish the medical conditions that potentially put people at higher risk for severe illness from COVID-19."); *United States v. Koons*, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020) (finding that the petitioner's hypertension and high cholesterol as related to COVID-19 did not constitute extraordinary and compelling circumstances); *Czerwinski v. Adducci*, 2020 WL 1915326, at *1 (E.D. Mich. Apr. 20, 2020) ("While

---

- Hypertension or high blood pressure
- Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines
- Neurologic conditions, such as dementia
- Liver disease
- Pregnancy
- Pulmonary fibrosis (having damaged or scarred lung tissues)
- Smoking
- Thalassemia (a type of blood disorder)
- Type 1 diabetes mellitus"

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 13, 2020).

[6] *Patients with Hypertension*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension (last visited July 13, 2020).

[the petitioner's] age (65) is a COVID-19 consideration, his medical claims of alcoholism, cigarette addiction, high blood pressure, depression, anxiety, and mental disorder do not support a claim of a compromised immune system or increased susceptibility to the COVID-19 virus."); *United States v. Zehner*, 2020 WL 1892188, at *2 (S.D.N.Y. Apr. 15, 2020) ("[Petitioner] is less than 65 years old and although he suffers from high blood pressure and depression, he does not claim to have an underlying condition that indicates that he is at heightened risk for severe illness from COVID-19."); *United States v. Boone*, 2020 WL 1865202, at *3 (E.D. Cal. Apr. 14, 2020) ("Without more, the fact that Defendant is 57 years old and has high blood pressure does not justify release."); *United States v. Dillard*, 2020 WL 1697243, at *2 (S.D. Ind. Apr. 7, 2020) ("Dillard is 34 years old and, to date, hypertension has not been identified as one of the conditions that places an individual in a higher risk category . . . . The Court finds the COVID- 19 pandemic and Dillard's health conditions have not created a compelling reason for his release from detention.").

Hondal's alleged health conditions are not documented, partially because Hondal alleges that he is being denied medical care. It is clear from the Hearing that Hondal complained of cold-like symptoms in March 2020 and was examined by the WCC doctor. There is no clear evidence as to whether Hondal made subsequent requests for care. Regardless, assuming Hondal's allegations are true, hypertension, scabies, and weight loss or malnutrition do not clearly meet the CDC guidelines for causing an individual to be "high risk" or medically vulnerable.

Hondal likens his situation to the petitioners in *Dada*, especially as to his alleged malnutrition. First, the District Judge has made clear that *Dada* "has no precedential value as to any other detainee at any other time." *Dada v. Witte*, 1:20-CV-00458, 2020 WL 2614616, at *1 (W.D. La. May 22, 2020). Second, in addition to allegedly severe malnutrition, Petitioner Taluta Dada also suffered from hypothyroidism and asthma; Petitioner Suresh Kumar was on a feeding tube and also suffered from Hepatitis C and a chronic liver infection; and Petitioner Pardeep Kumar also suffered from a kidney infection and required hospitalization. *See Dada*, 1:20-CV000458, ECF No. 2-7 at 1-2; 2-13 at 1; 1 at 14; 2-12 at 1; 23 at 9. Hondal's allegations do not arise to the severity of those who were granted relief in *Dada*.

Hondal also alleges that Respondents have "refused to implement cleaning and protection procedures" to properly protect him from contracting COVID19. ECF No. 8 at 4. He alleges the guards do not wear masks or gloves, that detainees cannot maintain a safe distance from one another, and detainees do not have hand sanitizer. ECF No. 8-1. Hondal also claims he is kept in his cell all day on lockdown. *See id.*

According to Quincy Hodges ("Hodges"), Acting Field Office Director, WCC is currently housing less than 50% of its detainee capacity. ECF No. 17-1 at 3. Hodges states that, although there is approximately three feet in between beds, "detainees can usually sleep with an empty bed between in between each detainee" due to the reduced capacity *See id.* Additionally, although the 78,000 square foot cafeteria can accommodate 248 detainees, no more than 44 detainees eat at a time and each can generally have a table to himself. *See id.*

11

New detainees who exhibit symptoms of COVID-19 on arrival are isolated and tested. ECF No. 17-1 at 4. Detainees with known exposure to COVID-19 are placed in cohorts with restricted movement for 14 days. As of June 15, 2020, there were 14 cases of COVID-19 at WCC. *See id.* According to ICE, there are currently 6 cases at WCC.[7] A total of 121 cases have been diagnosed at WCC this year, but they have either recovered or been released.[8] *Id.*

Hodges also reports that detainees each have two cloth masks, which must be worn when entering or exiting the dorm. ECF No. 17-1 at 5. Detainees are provided soap and have access to hand sanitizer at "several locations throughout the facility." *Id.*

Despite the alleged deficiencies in Respondents' approach to containment, Hondal does not allege that he has been directly exposed to COVID-19. Moreover, since his Petition (ECF No. 1) was filed, Hondal has remained in good health according to the record before the Court.

Hondal has not been diagnosed with COVID-19 or directly exposed to the virus; does not have any condition recognized by the CDC that puts him at a higher risk of contracting the virus, especially considering his youth; is housed in a facility operating at less than 50% of capacity; and, the record indicates that WCC has made substantial efforts in preventing and mitigating the spread of or harm caused by

---

[7] https://www.ice.gov/coronavirus (last visited July 13, 2020).

[8] *Id.* ("Total confirmed COVID-19 cases" is the cumulative total of detainees who have tested positive for COVID-19 while in ICE custody since testing began in February 2020. Some detainees may no longer be in ICE custody or may have since tested negative for the virus.").

12

COVID-19. Thus, Hondal has not shown a substantial likelihood that he will prevail on the merits or a substantial threat that he will suffer irreparable injury if the injunction is not granted. *See Bhatia*, 2017 WL 1026054, at *1. Therefore, Hondal is not entitled to emergency injunctive relief.

### III. Conclusion

Because Hondal cannot show that he is entitled to emergency injunctive relief, IT IS RECOMMENDED that the Motion for Temporary Restraining Order (ECF No. 8) be DENIED.

Hondal may supplement his Petition (ECF No. 1) within 20 days with any additional evidentiary support for the merits of his § 2241 claim. Additionally, Respondents may supplement their Response with any additional argument regarding the legality of Hondal's detention raised in the Petition (ECF No. 1) that was not addressed in the Motion for TRO (ECF No. 8) or the Response to the Motion for TRO (ECF No. 17).

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed.R.Civ.P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 13th day of July 2020.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE